## 17546

Clyde C. DEAN, Respondent, v. TEMPTRON, Inc., Appellant
(109 S. E. (2d) 167)

*Messrs. T. B. Bryant, Jr.,* and *Fred R. Fanning, Jr.,* of Orangeburg, for Appellant,

*Marshall B. Williams,* Esq., of Orangeburg, *for Respondent,*

June 15, 1959.

LEGGE, Justice.

Action for personal injuries resulting from collision of two automobiles. Verdict was for the plaintiff, $2,000.00 actual damages. This appeal poses three questions:

1. Was there sufficient evidence of negligence on the part of the defendant to take the case to the jury?

2. Did the evidence show that the plaintiff was guilty of contributory negligence as a matter of law.

3. Was it reversible error for the trial judge to refuse to order a mistrial because of an improper remark made by the plaintiff while testifying?

Both automobiles were traveling from Columbia, S. C., southward on U. S. Highway 321, a divided, or dual-lane, highway. About four miles south of Columbia, Highway 215 joins 321 from the west, in a divided intersection, and proceeds northward with 321, to Columbia. The southbound lane of 321 divides, as it reaches a triangular traffic island at the intersection, into two roadways. One bears to the right, along the north side of the island, for traffic intending to proceed westward on 215. The other, proceeding southward through the island, crosses 215 and is protected against its traffic by a large stop sign at the west side of the intersection.

The accident occurred on the afternoon of May 20, 1958; between 4:30 and 5:00 o'clock. The weather was misty, and according to some of the testimony, there was a slight drizzle of rain. Mr. Dean, the plaintiff, was driving a Sunbeam Rapier, a small, light car. Sitting on the front seat with him was Mr. Lofton Fanning; on the rear seat was Mr. John D. Horne. The defendant's car, a 1956 DeSoto, was being operated by the defendant's vice-president, Mr. James H. Austin, who was alone.

Mr. Dean testified that his speed, as he approached the intersection, was between thirty-five and forty miles per hour; that when he was within some two hundred feet of the intersection the defendant's car, traveling at about fifty or fifty-five miles per hour, whipped around him on his right, and that when it had gotten about fifty feet ahead of him and was swinging back to its left, its rear end "flared up" as its brakes were suddenly applied with force and its speed abruptly reduced; that there being no room to pass on either side of it, he immediately applied his brakes and skidded approximately thirty feet, the left side of his car striking the rear end of the DeSoto, which at the moment of the impact was about four feet into the intersection of 215. Immediately after the collision Mr. Austin came up to Mr. Dean and his companions and declared that he was at fault; that he was unfamiliar with that intersection; and that he had thought that an army truck coming east on 215, was going to cross 321 without stopping. Mr. Dean, whose attention had been centered on the DeSoto which had just gone around him, had not seen the truck as it approached the stop sign at the intersection.

Mr. Fanning's testimony corroborated that of Mr. Dean, except that Mr. Fanning did not see Mr. Austin's car pass Mr. Dean's. He testified that to the best of his recollection his attention was first directed to the DeSoto by the "screaming" of its brakes; and that then Mr. Dean's car was within some forty or fifty feet of the intersection.

Mr. Horne's testimony was substantially to the same effect.

Mr. Tweedlie, a police officer of the town of West Co-
lumbia, who had come up shortly after the accident and
thereupon investigated it, testified that in response to his
inquiry as to how the accident had happened Mr. Austin
had replied that he was unfamiliar with the intersection and
had thought that a truck, approaching on 215, was not going
to stop. Mr. Tweedlie also testified that his questioning of
Mr. Austin was done in the presence of Mr. C. V. Perry, Jr.,
the assistant chief of police of West Columbia, and that in
the course of it Mr. Austin had also said that he didn't know
why he had stopped.

The witnesses for the defendant were Mr. Austin and Mr.
Perry. Mr. Austin testified: that he did not recall passing
Mr. Dean's car; that as he approached the intersection he
noticed an army command car coming east on 215 at a rather
rapid rate of speed, and it appeared to him that it was not
going to stop for the intersection; and that he thereupon ap-
plied his brakes and slowed to five or ten miles an hour. It
then becoming apparent that the army car was going to stop,
he released the brakes, and about that time Mr. Dean's car
struck his in the rear. He testified that he got out and walked
back across the intersection, where Messrs. Dean, Fanning,
and Horne were getting out of their car; that upon his in-
quiring as to whether any of them had been hurt they replied
in the negative; that in a few minutes Officer Tweedlie came
up and directed traffic until Officer Perry arrived; and that
then they all went over to the DeSoto, where the officers
made their investigation. He testified that at no time did he
or anybody else say that he was at fault or that he had
stopped in the middle of the road. He testified that his car
was going at approximately fifteen miles per hour when it
was struck.

Officer Perry testified: that Mr. Austin did not state in his
presence or that of Officer Tweedlie that he had stopped in
the road and that the accident had been due to his fault;
that when the witness arrived at the scene it was raining a
little, but not enough to require a motorist to use a wind-
shield wiper, and not enough to have obliterated skidmarks

made within the previous hour; and that he examined the pavement for skidmarks, but found none.

The evidence was conflicting, as the foregoing review of it shows. The issues of negligence on the one hand and contributory negligence on the other were properly left to the jury.

In the course of his testimony, Officer Perry stated that on the Saturday before the trial Mr. Dean and Mr. Fanning came to his home and entered into conversation with him concerning the accident; and that he then told Mr. Dean that he had already conferred with defendant's counsel, but had no intention of testifying unless required to do so by the court, and that he did not remember anything about the case. He testified that Mr. Dean then offered to pay him more than defendant's counsel would, if he would testify in his favor. Called in reply, Mr. Dean referred to Officer Perry as "an unmitigated liar"; whereupon the defendant moved for a mistrial. The trial judge refused the motion, but promptly admonished the witness and stated to the jury that the remark was improper.

Mr. Dean's remark was of course improper; but determination of whether it was of such nature as to preclude impartial consideration of the case by the jury was a matter resting in the sound discretion of the trial judge. 53 Am. Jur., Trial, Section 41, p. 54; 88 C. J. S., Trial; § 52, p. 139. We find no abuse of that discretion in his refusal to order a mistrial.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.